UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
01 JUN 20 PM 2: 25
U.S. DISTRICT COURT
N.D OF ALABAMA

THE LLOYD NOLAND FOUNDATION, INC. )
)
    Plaintiff, )
)
vs. ) Civil Action No: CV-01-S-437-S
)
TENET HEALTHCARE CORPORATION, )
)
    Defendant. )

ENTERED
JUN 20 2001

## MEMORANDUM OPINION

This action is before the court on defendant's motion to dismiss pursuant to Rule 12(b)(7) for failure to join a necessary party under Rule 19. Upon consideration of the motion, supporting memorandum, replies (doc. nos. 8-10), and oral argument of counsel, the court finds defendant's motion is due to be denied.

### I. FACTS

Plaintiff, The Lloyd Nolan Foundation, Inc., is a non-profit corporation providing healthcare services in the State of Alabama. A non-party, Tenet HealthSystem Medical, Inc. ("THSM"), is a wholly-owned corporate subsidiary of defendant, Tenet Healthcare Corporation.

Plaintiff entered into an agreement with THSM on July 15, 1996, by the terms of which plaintiff agreed to sell, and THSM agreed to purchase, all of the stock and assets of the Lloyd Nolan Hospital located in Fairfield, Alabama. (The parties have used the

phrase "Stock Purchase Agreement" to refer to that transaction.[1]) The Stock Purchase Agreement included provisions requiring THSM to perform certain obligations concerning 120 acute-care hospital beds, and to provide medical benefits to plaintiff's retired employees. The Stock Purchase Agreement further provided that any successors or assigns would be bound to perform the obligations of THSM, and that THSM must obtain plaintiff's prior written consent before delegating or assigning its obligations under the terms of the agreement.

"[A]s an inducement to the Seller [plaintiff] to close the transactions set forth in the Stock Purchase Agreement, and[,] as security for the performance of the obligations by Purchaser [THSM] pursuant to the Stock Purchase Agreement <u>and of the continuing obligations of Purchaser</u>,"[2] defendant entered into a guaranty agreement with plaintiff on October 4, 1996. That agreement provides that defendant unconditionally guarantees the performance of the obligations of THSM, and that plaintiff need not assert a claim against THSM before asserting a claim against defendant.

> This Guaranty Agreement is an unconditional guaranty. Guarantor agrees that the Seller, in the event of a default of Purchaser or any Affiliate of Guarantor,

---

[1]*See, e.g.*, complaint (doc. no. 1) ¶ 5.

[2]Guaranty agreement executed by plaintiff and defendant on October 4, 1996 (Exhibit A to complaint), at 1 (emphasis supplied).

2

shall not be required to assert any claim or cause of action against the Purchaser [THSM] or any Affiliate of Guarantor or any other guarantor before asserting any claim or cause of action against the Guarantor under this Guaranty Agreement.[3]

THSM sold the Lloyd Noland Hospital and all of the licensed acute-care beds and assets to the City of Fairfield Healthcare Authority On November 15, 1999. Plaintiff asserts that it was assured by THSM "that it would require the [City of Fairfield Healthcare Authority] to assume the ... duties and obligations" of THSM to plaintiff,[4] but failed to do so. Plaintiff therefore commenced this action against defendant on February 16, 2001. THSM is not named as a defendant, and plaintiff asserts no claims against it. Plaintiff contends that THSM failed to perform some of its obligations under the Stock Purchase Agreement,[5] and that defendant is consequently liable under the terms of the unconditional guaranty agreement. Defendant argues, however, that THSM is a necessary (if not indispensable) party, and that the

---

[3] *Id.*

[4] Complaint ¶ 7.

[5] Plaintiff alleges THSM: 1) failed to re-sell to plaintiff 120 acute-care hospital beds for one dollar; 2) failed to cooperate in having the beds relicensed, recertified, or relocated for long-term acute-care services; and 3) failed to lease to plaintiff 19,000 square feet in the Lloyd Noland Hospital for the purpose of operating the beds. Plaintiff further claims THSM was obligated to provide medical benefits to plaintiff's retired employees, but did not do so. Plaintiff also asserts THSM breached its obligations to bind any of its successors or assigns to the terms of the stock purchase agreement and to obtain prior written consent from plaintiff before delegating or assigning any of the assets, rights, or duties under the agreement.

3

action must be dismissed unless it is joined.

## II. DISCUSSION

Defendant contends complete relief cannot be accorded among the existing parties. It argues that THSM has an interest in this action because its conduct is the basis for predicating defendant's liability to plaintiff under the guaranty agreement. Defendant also asserts that THSM should be afforded the opportunity to assert any available defenses to plaintiff's allegations.

Rule 19 of the Federal Rules of Civil Procedure provides:

> **(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue of the action improper, that party shall be dismissed from the action.
>
> **(b) Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity or good conscience the action

should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Rule 19 provides a two-part analysis for determining whether an action may proceed in the absence of a party needed for a just adjudication of the controversy. First, the court should determine whether the absent party should be joined. See *Laker Airways v. British Airways*, 182 F.3d 843, 847 (11th Cir. 1999). If the court finds in the affirmative, and the party cannot be joined, it must then determine whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed ... ." *See id*. When applying Rule 19, the court must "eschew formalism in favor of flexible practicality." *City of Marietta v. CSX Transportation*, 196 F.3d 1300, 1305 (11th Cir. 1999).

"A party is considered 'necessary' to the action if the court determines either that complete relief cannot be granted with the present parties or the absent party has an interest in the disposition of the current proceedings." *Laker Airways*, 182 F.3d

at 847; *see also City of Marietta*, 196 F.3d at 1305.[6]

Under Rule 19(a)(1), a court must first examine whether complete relief can be accorded in the absence of THSM. Plaintiff seeks to recover from defendant damages incurred by an alleged breach of contract by its corporate subsidiary. According to the terms of the guaranty agreement, plaintiff has the right to recover monetary damages from defendant, including "all costs, attorneys' fees or expenses which may be incurred by Seller [plaintiff] by reason of a default by Purchaser [THSM]." Plaintiff requests only monetary damages. It has not asked for specific performance or other equitable relief. Thus, plaintiff can receive complete monetary relief from defendant for the alleged breaches by THSM.

This court must next determine whether THSM has an interest in the disposition of this action. The Eleventh Circuit has not decided whether a principal obligor must be joined under Rule 19 in an action between the guarantor and obligee. Defendant urges this court to follow decisions of the U. S. District Court for the District of Puerto Rico, holding that a subsidiary is an indispensable party when it is the primary participant in a dispute involving both the parent and the subsidiary. *See E & E*

---

[6]Rule 19 utilizes the term "feasible" instead of "necessary." The use of "necessary" is derived from case law predating Rule 19 in its current form.

*Investment, Inc. v. Simmons Company*, 169 F.R.D. 467, 470 (D. P.R. 1996); *Lopez v. Shearson American Express, Inc.*, 684 F. Supp. 1144, 1147 (D. P.R. 1988). These cases are inapposite, however.

In *Simmons*, the plaintiff entered into a contract with Simmons Caribbean Bedding, Inc. When the latter entity breached, the plaintiff sought to recover from Simmons Company, the corporate parent of the defendant. 169 F.R.D. at 468. Unlike the present case, there was no agreement between Simmons Company and the plaintiff. The court therefore dismissed the action for failure to join Simmons Caribbean Bedding, Inc. *Id.* at 472.

In *Lopez*, the plaintiff commenced an action for breach of an employment agreement and loss of business reputation. He sued the parent corporation. 684 F. Supp. at 1146. The court determined that plaintiff actually had been employed by a subsidiary of the named defendant, despite the fact that the subsidiary was fully guaranteed by the parent. *Id.* at 1146-47. Finding that the subsidiary was an indispensable party under Rule 19, the court dismissed the action. *Id.* at 1150. *Lopez* did not, however, involve a contractual guaranty. The guaranty was implemented pursuant to Rule 322 of the New York Stock Exchange. *Id.* at 1146. There was no agreement, employment or otherwise, between the

7

plaintiff and the corporate parent named as defendant in the action.

Defendant also relies upon a case from the present Fifth Circuit, *Freeman v. Northwest Acceptance Corporation*, 754 F.2d 553 (5th Cir. 1985), in which the plaintiffs commenced an action against Northwest in the U. S. District Court for the Southern District of Texas, seeking damages for the conversion of gravel. The plaintiffs alleged themselves to be Texas citizens and Northwest to be a citizen of Oregon. Jurisdiction was premised on diversity. *Id.* at 554. The court found that plaintiffs were merely "sojourners" in Texas, and that "all of their permanent ties have been and remain with Colorado." *Id.* at 556. The court further found that the primary tortfeasor was Northwest's wholly-owned subsidiary, First Commercial Credit Corporation, a Colorado corporation. *Id.* at 559. The court determined that Northwest was an alter ego of First Commercial, and that, as such, it had acquired the Colorado citizenship of First Commercial. *Id.* at 558. The court accordingly dismissed the action for lack of diversity. The court also held that the action was due to be dismissed on an alternate ground: plaintiffs had failed to join a necessary party, First Commercial. *Id.* at 559.

The cases cited by defendant thus are linked by a common thread — the corporate parents were not contractually bound to the plaintiffs. The plaintiff simply sued the wrong party.

The present action is distinguishable. Here, defendant entered into a written agreement with plaintiff, unconditionally guaranteeing the performance of THSM's duties and obligations. Plaintiff and defendant are the only parties to that guaranty agreement. The agreement was signed at defendant's corporate headquarters in California by its Vice President.

The present action thus is more analogous to *WMX Technologies, Inc. v. Jackson*, 168 F.R.D. 64 (M.D. Ala. 1996). There, Jackson, WMX, and subsidiaries of WMX entered into an acquisition agreement, by the terms of which WMX acquired Jackson's interest in several waste management businesses. In the acquisition agreement, Jackson agreed to indemnify WMX and its subsidiaries from losses arising from prior business operations, or from the breach of obligations contained in the acquisition agreement. WMX later made a demand upon Jackson for indemnified losses, which Jackson rejected. In response, WMX commenced a declaratory judgment action in the District Court. *Id.* at 65. Jackson moved to dismiss, claiming the subsidiaries were indispensable parties — a contention the

9

district court rejected. The court first observed that the only parties to the acquisition agreement were Jackson and WMX. *Id.* It further observed that WMX was named in the agreement as the party that would give notice to Jackson of any losses. Finally, although the subsidiaries also were entitled to indemnity, the court found they were merely third party beneficiaries with no right to enforce the agreement. *Id.* at 67. Thus, the court found that the subsidiaries were neither necessary nor indispensable to the action. *Id.* at 68.

Another analogous case is *Aetna Casualty and Surety Company v. Namrod Development Corporation*, 140 B.R. 56 (S.D.N.Y. 1992). Defendant Namrod had entered into construction contracts with various New York City agencies, and plaintiff Aetna had issued performance and payment bonds insuring its performance. *Id.* Louis and Peter Evangelista, Namrod's officers and controlling shareholders, executed a guaranty agreement agreeing to indemnify Aetna for any losses resulting from furnishing the bonds. Namrod defaulted on the construction contracts, and filed for bankruptcy. Aetna completed the projects through other construction companies, and sued the Evangelistas for indemnification of its losses. *Id.* at 58. The Evangelistas moved for dismissal for Aetna's failure to

join Namrod, asserting they would be unable adequately to conduct their defense in the absence of Namrod. The Evangelistas further argued that a judgment would collaterally estop Namrod in its bankruptcy proceeding. *Id.* The U. S. District Court for the Southern District of New York rejected both arguments. First, the court observed that the existing parties would raise the same defensive arguments as Namrod. *Id.* at 61. Thus, Namrod's interests were adequately represented. Further, the court found the theoretical possibility of inconsistent results did not demonstrate a "substantial risk of incurring ... inconsistent obligations." *Id.* at 62 (citing Rule 19(a)).

In the cases cited by defendant here, the plaintiffs had simply sued the wrong party. There was no relationship between the plaintiffs and the corporate parents. Here, plaintiff and defendant are parties to a contract. Although its interests are indirectly implicated, THSM merely is a third party beneficiary of the guaranty agreement between plaintiff and defendant. Defendant has every incentive to prove that THSM did not breach the stock purchase agreement. Further, because it owns and controls THSM, defendant has access to all of the resources available to THSM. Thus, as the First Circuit aptly observed,

11

> [t]he mere fact ... that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party. Given the vast range of potential insults and allegations of impropriety that may be directed at non-parties in civil litigation, a contrary view would greatly expand the universe of Rule 19(a) necessary parties. It is therefore not surprising that cases interpreting Rule 19 consistently hold that such "slandered outsiders' need not be joined.

*Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 136 (1st Cir. 1989).

### III. CONCLUSION

For the forgoing reasons, defendant's motion is due to be denied. An order consistent with this memorandum opinion shall be issued contemporaneously herewith.

DONE this the 20th day of June, 2001.

_____
United States District Judge