UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE LLOYD NOLAND FOUNDATION, INC., | ] | |
| Plaintiff, | ] ] ] | |
| vs. | ] ] | |
| TENET HEALTHCARE CORPORATION, | ] ] ] | Case Nos. CV-01-BE-437-S and CV-01-BE-1904-S |
| Defendant, | ] ] | |
| vs. | ] ] | |
| CITY OF FAIRFIELD HEALTHCARE AUTHORITY AND HEALTHSOUTH CORP., | ] ] ] | |
| Third Party Defendants. | ] | |

**ENTERED**
- 9 2004

## MEMORANDUM OPINION

Before the court are the following motions: Third Party Defendant Fairfield Healthcare Authority's Motion for Summary Judgment (Doc. 77); Third Party Defendant HealthSouth Corporation's Motion for Summary Judgment (Doc. 80); and Defendant/Third Party Plaintiff Tenet Health Care's Motion For Partial Summary Judgment (Doc. 82). The motions before the court address whether, under an agreement known as the "Agreement Regarding Amendment of Secured Promissory Note," Fairfield Health Care Authority and HealthSouth Corporation must indemnify Tenet Health Care as to two obligations Tenet *may* owe the plaintiff, Lloyd Nolan Foundation. As to both the Authority's and HealthSouth's obligations to indemnify Tenet under the Agreement Regarding Amendment, the primary question is whether the agreement to indemnify expired upon

1

full payment of the Note. Beyond this primary question is a secondary issue particular to the Authority's liability: whether the Authority authorized HealthSouth to execute an indemnity agreement on the Authority's behalf.

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact are presented and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In this case, no party disputes the facts, and, consequently, the question is whether any movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

Having carefully reviewed the parties' motions, briefs and evidentiary submissions, for the reasons set forth below, the court rules on the parties' motions as follows: the court grants in part and denies in part Third Party Defendant Fairfield Healthcare Authority's Motion for Summary Judgment (Doc. 77); the court grants Third Party Defendant HealthSouth Corporation's Motion for Summary Judgment (Doc. 80); and the court denies Defendant/Third Party Plaintiff Tenet Health Care's Motion For Partial Summary Judgment (Doc. 82). Because no claims remain against Third Party Defendant HealthSouth Corporation and Third Party Defendant Fairfield Healthcare Authority, the court dismisses them with prejudice from the case.

**I. Facts.**[1]

---

[1] The case before the court is but a sordid example of numerous lawsuits arising from the transactions described herein. *See, e.g., Sellers v. Tenet Healthcare Corp.*, No. Cv-03-PWG-457-S (N.D. Ala. filed Feb. 28, 2003); *Lloyd Nolan Found., Inc., v. City of Fairfield Healthcare Auth.*, 837 So. 2d 253 (Ala. 2002); *see also* Anna Velasco, *Noland Foundation Charges HealthSouth Fraud*, Birmingham News, Aug. 31, 2004, at D1. The court recognizes that a December 16, 2003 consent decree entered in *Sellers* appears to obligate HealthSouth to honor the Retiree Medical Discount Program. *See* Doc. 44 in *Sellers*.

In 1996, the Lloyd Nolan Foundation sold Lloyd Nolan Hospital to Tenet.[2] In agreeing to sell the hospital, the Lloyd Nolan Foundation reserved an option to repurchase 120 hospital beds from Tenet for $1.00 and required Tenet to undertake certain responsibilities regarding a retiree medical discount program. Lloyd Nolan also required Tenet to bind over any future owner of the hospital to these same two obligations. The indemnity provision at issue pertains to the responsibility of later owners of the hospital to indemnify Tenet against liability to Lloyd Nolan for violating these two obligations.

In 1999, Tenet sold the hospital to the Authority. The sale involved four contracts potentially relevant to the construction of the Agreement Regarding Amendment of the Promissory Note: the Asset Sale Agreement, executed on October 21, 1999; a Security Agreement, executed on November 15, 1999; a Six Month Promissory Note, executed on November 15, 1999; and a Guaranty Agreement, executed on November 15, 1999. The parties to the Asset Sale Agreement were Tenet and the Authority only. The Security Agreement also contained an indemnity provision that Tenet admits expired upon payment of the Note. *See Tenet Healthcare Corp.'s Opposition to Motions For Summary Judgment,* Doc. 96, at p. 11. The parties to the Security Agreement were Tenet and the Authority. The Authority also executed the Six Month Promissory Note in favor of Tenet. HealthSouth was not a party to the promissory Note, but guaranteed the Note in the Guaranty Agreement between itself and Tenet. HealthSouth assumed no indemnity obligations in the Guaranty Agreement. The Six Month Promissory Note contained no reference to indemnity. The Promissory Note was amended by the Agreement Regarding Amendment of Secured Promissory

---

[2] A subsidiary of Tenet Health Care purchased the hospital, but the distinction between parent and subsidiary is not relevant here.

3

Note on May 15, 2000–the agreement that contains the indemnity provision at issue.

The Authority could not pay the Six Month Promissory Note when due, but in the Agreement Regarding Amendment, Tenet agreed to extend the due date of the Note. Tenet, HealthSouth, and the Authority were all parties to the Agreement Regarding Amendment.[3] The Agreement Regarding Amendment of the Promissory Note contained the indemnity provision at issue:

> <u>Indemnification obligation</u>: The Authority and Guarantor [HealthSouth] shall jointly and severally indemnify Payee [Tenet] for any loss, damage, expenses, or costs (including attorney's fees) incurred by Payee that are attributable to any claim by the Lloyd Nolan Foundation, an Alabama nonprofit corporation ("LNF"), based on acts or a failure to act by the Authority and/or Guarantor after the Closing Date (as such term is defined in the Asset Sale Agreement) with respect to "LNF beds" as such term is used in Schedule 1.7 (f) to the Asset Sale Agreement and/or the Lloyd Nolan Retiree Medical Discount Program, referenced in Schedule 1.7 (f).

*Agreement Regarding Amendment*, Doc. 81, Ex. F, page 3, paragraph 6.

The Closing Date, to which the indemnity provision refers, was November 15, 1999, the date on which the Authority delivered to Tenet the Six Month Promissory Note. The Closing Date marked the *beginning* of HealthSouth and the Authority's obligation to indemnify Tenet, but the indemnity provision contains no express statement as to when the obligation to indemnify *ends*.

On November 15, 2000, HealthSouth paid the Note in full. Tenet subsequently acknowledged full payment in several letters and returned the Promissory Note. On May 2, 2001, Tenet formally demanded indemnity from the Authority and HealthSouth under the Agreement

---

[3]As the Authority's agent, HealthSouth signed the Agreement Regarding Amendment on the Authority's behalf. HealthSouth also entered into the Agreement Regarding Amendment on its own behalf.

Regarding Amendment of Promissory Note.[4]

## II. Discussion

Both the Authority and HealthSouth argue that the entire Agreement Regarding Amendment of Promissory Note, including the agreement to indemnify Tenet, expired when HealthSouth fully paid the Note. Tenet argues that the indemnification provision has no durational limitation. All parties agree no genuine issue of material fact exists as to indemnity under the Agreement Regarding Promissory Note. The question before the court is one of contract construction, an issue within the purview of the court. *See Alfa Life Ins. Corp. v. Johnson*, 822 So. 2d 400, 405 (Ala. 2001); *Lolley v. Howell*, 504 So. 2d 253, 255 (Ala. 1987).

### A. Summary of Parties' Arguments

Tenet argues that the Agreement Regarding Amendment of Promissory Note contains an agreement to amend the Promissory Note *plus* additional agreements "related" to amending the Promissory Note. According to Tenet, though "related" to the amendment of the Note, the other agreements did not end when HealthSouth paid the Note in full. In support of its preferred construction, Tenet cites, among other things, the following provision of the Agreement Regarding Amendment: "'The Authority, Payee, and Guarantor desire to enter into this Agreement to set forth their agreement to amend the Note with respect to the proposed extension, *and to address certain other matters related thereto*." *Tenet's Brief in Support of Its Motion*, Doc. 83, at p. 21-22 (quoting *Agreement Regarding Amendment*, at p. 1, item D) (emphasis Tenet's). Tenet argues that "only Section 1, entitled 'Amendment of the Note,' amends the Note. . . . The remaining portions. . .

---

[4]In May 2000, Tenet demanded indemnity from the Authority under the Asset Sale Agreement, but the indemnity under the Asset Sale Agreement is not before the court on these motions.

5

address the 'other matters' referred to in the Recitals." *Tenet's Brief in Support of Its Motion*, Doc. 83, at p. 22.

Because the indemnification provision is an agreement related to, but separate from, the agreement to amend the Promissory Note, Tenet argues, the indemnity provision did not expire upon payment of the Promissory Note. Tenet, therefore, urges that the indemnity provision is a provision without time limitation. Under the law, Tenet argues, an indemnification provision without limitation continues until terminated by one of the parties to the agreement. *Id.*

HealthSouth and the Authority both argue that full payment of the Note extinguished all obligations in the Agreement Regarding Amendment. According to HealthSouth's reasoning, the indemnity provision, containing no language to the contrary, was subject to the same time limitations as the rest of the Agreement Regarding Amendment; the Agreement Regarding Amendment was governed by the time limitations in the Promissory Note, the Guaranty Agreement and the Security Agreement; and the Promissory Note, the Guaranty Agreement and the Security Agreement all expired upon payment of the Note. Therefore, HealthSouth argues, the indemnity provision expired upon payment of the Note.

In support of its reasoning, HealthSouth notes that the Guaranty Agreement, which expired when the Note was paid in full, contained the following language: "Any modification, supplement or waiver shall be for such period and subject to such conditions as shall be specified in the written instrument effecting the same[.]" *Third-Party Defendant HealthSouth Corporation's Motion for Summary Judgment and Supporting Brief*, Doc. 80, at p. 13; *Guaranty Agreement*, Doc. 81, Ex. D, at 4-5, paragraph p. 14. HealthSouth also recites the language of the Agreement Regarding Amendment of Promissory Note: "'The Guaranty, and all of Payee's rights and remedies thereunder,

6

shall remain in full force and effect not withstanding this Agreement. . . . Except as set forth in this Agreement, the Guaranty, and all of Payee's rights and remedies thereunder, are hereby ratified and declared to be in full force and effect.'" *Third-Party Defendant HealthSouth Corporation's Motion for Summary Judgment and Supporting Brief*, Doc. 80, at 13-14 (quoting *Guaranty Agreement*, Doc. 81, Ex. D, at 3, paragraphs 4-5. HealthSouth reasons that the indemnity provision expired upon payment of the Note because no time limit other than a six-month extension for payment specifically altered the time limitations in the Guaranty Agreement.

Like HealthSouth, the Authority argues that the indemnity provision, as part of the Agreement Regarding Amendment of Promissory Note, was extinguished upon payment of the Note. The Authority quotes the language of the Agreement Regarding Amendment: "This Agreement hereby amends the Note to the extent specifically set forth herein." *The Authority's Brief in Support of Its Motion*, Doc. 79, at 10; *Agreement Regarding Amendment*, Doc. 81, Ex. F, at p. 2, paragraph 1. Because the agreement merely amended the Note, the terms of the agreement expired upon payment of the Note.

HealthSouth and the Authority point out that the language of the indemnity provision refers to the parties as "Payee," "Guarantor," and "Authority." *Agreement Regarding Amendment*, Doc. 81, Ex. F, at 3, paragraph 6. The use of such terms, they argue, "proves that the parties intended to link the duration of Tenet's indemnity protection to payment of the Note. . . . Once the Note was paid... Tenet was no longer 'Payee,' and it was no longer entitled to demand indemnity from HealthSouth." *Third-Party Defendant HealthSouth Corporation's Motion for Summary Judgment and Supporting Brief*, Doc. 80, at p. 17; *see also The Authority's Brief in Support of Its Motion*, Doc. 79, at p. 10.

**B. The Indemnity Provision Expired Upon Payment of the Note.**

Both the Authority and HealthSouth argue that the entire Agreement Regarding Amendment of Promissory Note, including the agreement to indemnify Tenet, expired when HealthSouth paid the Note. Tenet argues that the indemnification obligation is perpetual because the indemnification provision itself has no express durational limitation. The court addresses all these arguments together because HealthSouth's and the Authority's arguments are substantially related, and because, if the indemnity provision in the Agreement Regarding Amendment expired upon full payment of the Note, it expired as to both the Authority and HealthSouth.[5]

Under Alabama law, contract interpretation is generally a matter for the courts, and a court is to determine as a matter of law whether a contract term is ambiguous. *Lolley v. Howell*, 504 So. 2d 253, 255 (Ala. 1987). "Just because the parties allege different constructions of an agreement, it does not necessarily mean that the agreement is ambiguous." *Yu v. Stephens*, 591 So. 2d 858, 859-60 (Ala. 1991) (citing *Englund's Flying Serv., Inc. v. Mobile Airport Auth.*, 536 So. 2d 1371, 1373 (Ala. 1988)). A contract is not ambiguous unless it is capable of more than one meaning. *Voyager Life Ins. Co. v. Whitson*, 703 So. 2d 944, 948 (Ala. 1997). "A court must construe a contract in its entirety, and single provisions or sentences are not to be dissociated from others having reference to the same subject matter." *Englund's Flying Serv.*, 536 So. 2d at 1373 (citations omitted).

In construing the Agreement Regarding Amendment as a whole, the court finds that, as a matter of law, the indemnity provision in the Agreement is unambiguous as to its duration and expired upon payment of the Note.

Though the indemnity clause explicitly denotes the beginning date of the indemnity

---

[5] The indemnity provision includes Authority and HealthSouth together, "jointly and severally." No party has taken the position that full payment may release one party but not the other from the obligation to indemnify, and no evidence supports such a position.

obligations, it is curiously mute as to its intended duration. Such silence, however, does not mean that the indemnity provision is without an implied limit on its duration.

In addressing its interpretation of silence, Tenet cites 17A Am. Jur. 2d *Contracts* § 369: "Insofar as it indicates anything, the absence of a particular provision from a contract indicates an intention to exclude it rather than an intention to include it." Tenet argues that the absence of a limitation on indemnity indicates an intent to exclude any limitation and to create a perpetual obligation to indemnify. The court does not find Tenet's argument helpful. The principle of 17A Am. Jur. 2d *Contracts* § 369 could just as easily be read to support the countervailing interpretation: that the absence of an expression of perpetuity indicates an intent to exclude any extension of the indemnity provision beyond the duration of the remainder of the Agreement.

Judge Guin, in *Henderson v. Croom*, 403 F. Supp. 668 (N.D. Ala. 1975), addressed what to do with an indemnity provision containing no durational limit. "A contract of indemnity continues in force only during such time as is expressly or impliedly provided for in the contract, and if no time is fixed for its duration, it is a contract terminable at the will of either party." *Henderson*, 403 F. Supp. at 671. HealthSouth and the Authority argue that, under *Henderson*, they and Tenet terminated the indemnity contract because they all agreed in a series of letters that the Note was fully paid and because Tenet returned the Promissory Note. Tenet, of course, argues that the indemnity agreement is still in force because no one ever *specifically* terminated the *indemnity* provision of the contract. Their arguments beg the overriding questions: does the Agreement Regarding Amendment "expressly or impliedly provide" for termination, and do full payment and return of the Note and

9

Amendment[6] terminate the indemnity agreement? *Henderson* only applies when–unlike in the present case–the indemnity provision does not "expressly *or impliedly*" provide for the provision's termination. Only then is the contract "terminable at the will of either party."

The first reason the court finds the indemnity provision expired upon payment of the Note is found not in the provision's silence, but in its language. The indemnification provision refers to Tenet and HealthSouth in their capacities as parties to the other agreements, "Payee" and "Guarantor," respectively. Denominating the parties to the indemnification provision according to their capacities under the other agreements certainly suggests that, contrary to Tenet's arguments, the indemnification provision *was* inextricably tied to the other agreements for payment of the Note. HealthSouth highlighted the most logical construction of indemnifying a "Payee": "Once the Note was paid . . . Tenet was no longer 'Payee,' and it was no longer entitled to demand indemnity. . . ." *Third-Party Defendant HealthSouth Corporation's Motion for Summary Judgment and Supporting Brief*, Doc. 80, at p. 17; *see also The Authority's Brief in Support of Its Motion*, Doc. 79, at p. 10. Furthermore, "a guarantor is deemed discharged from his guaranty if the principal debt is paid." *Bledsoe v. Cargill, Inc.*, 452 So. 2d 1334, 1336 (Ala. Civ. App. 1984). By using the term "Guarantor" in the indemnification agreement, the parties impliedly provided that HealthSouth's indemnification obligations were "deemed discharged" upon payment of the Note because then HealthSouth was no longer a "Guarantor."

The second reason the agreement impliedly terminates upon payment of the Note is that the

---

[6]When Tenet returned the Note and Amendment, it stated that by returning the Amendment it was *not* agreeing to terminate the indemnification provision in the Agreement Regarding Amendment. Yet the court is left with the question of construction: did the contract grant Tenet the *right* it purported to reserve, the right to demand indemnity after full payment of the Note?

indemnity provision appears in the context of an agreement to extend by six months the duration of a previous agreement–and the previous agreement terminated upon payment of the Note. Tenet argues vigorously that the indemnification provision is not part of the Agreement to extend the due date of the Note. *Tenet Healthcare Corp.'s Opposition to Motions For Summary Judgment*, Doc. 96, at p. 14; *see also Tenet's Brief in Support of Its Motion*, Doc. 83, at p. 21-22. According to Tenet, the court should read the indemnification agreement wholly apart from any other section of the Agreement and thereby ignore any durational limitations on obligations contained elsewhere in the Agreement.

As noted above, in support of its preferred construction, Tenet cites, among other things, a section of the Agreement Regarding Amendment: "The Authority, Payee, and Guarantor desire to enter into this Agreement to set forth their agreement to amend the Note with respect to the proposed extension, *and to address certain other matters related thereto*." *Tenet's Brief in Support of Its Motion*, Doc. 83, at p. 21 (quoting *Agreement Regarding Amendment*, at p. 1, item D) (emphasis Tenet's). Tenet argues that "only Section 1, entitled 'Amendment of the Note,' amends the Note.... The remaining portions. . . address the 'other matters' referred to in the Recitals." *Tenet's Brief in Support of Its Motion*, Doc. 83, at p. 22. Thus, Tenet argues that, because the indemnity provision was not contained under the heading "Amendment of the Note," "[t]he [i]ndemnification [o]bligation [d]id [n]ot [b]ecome [p]art of the Agreement Regarding Amendment." *Tenet Healthcare Corp.'s Opposition to Motions For Summary Judgment*, Doc. 96, at p. 14; *see also Tenet's Brief in Support of Its Motion*, Doc. 83, at p. 21-22. The court notes that the Agreement Regarding Amendment stipulates that "[c]aptions and paragraph headings are used herein for convenience only, are not a part of the Agreement, and *shall not* be used in construing either [the Agreement Regarding

Amendment or the Asset Sale Agreement]." *Agreement Regarding Amendment*, page 3, paragraph 8 (emphasis added). To give effect to all provisions in the contract, the court must interpret the Agreement in light of that stipulation.

This court is mindful of the rule that "[t]he agreement must be construed in its entirety, and a single provision or sentence is not to be dissociated from others having reference to the same subject matter," *Yu v. Stephens*, 591 So. 2d 858, 859 (Ala. 1991) (citing *Englund's Flying Serv., Inc. v. Mobile Airport Auth.*, 536 So.2d 1371, 1373 (Ala. 1988)). The construction consistent with the Agreement as a whole is that, as HealthSouth and the Authority suggest, the indemnification obligation expired upon payment of the Note, just as other obligations in the Agreement Regarding Amendment so expired.

Finally, in determining that the indemnity provision expired upon payment of the Note, the court considers the parties' agreement as it is contained within the four corners of all the documents that comprise this transaction. "It is well settled that 'two writings connected by reference one to the other . . . with respect to the same subject matter and proved to be parts of an entire transaction constitute but a single contract as if embodied in one instrument.'" *Bill White Roofing & Specialty Co. v. Cedric's, Inc.*, 387 So. 2d 189, 191 n.3 (Ala. 1980) (quoting *Moorer v. Tensaw Land & Timber Co.*, 20 So. 2d 105, 107 (Ala. 1944)). "[D]ocuments need not be executed contemporaneously. . . to be construed together, as long as the documents refer to one another." *K & C Dev. Corp. v. AmSouth Bank, N.A.*, 597 So. 2d 671, 674 (Ala.1992) (citing *Moorer*, 20 So. 2d at 107 (Ala. 1944)).

The Agreement Regarding Amendment must be construed together with other related documents. The Agreement Regarding Amendment extends the time for payment of the Note, refers

to the Asset Sale Agreement, and reaffirms and extends the Guaranty and the Security Agreement. Nothing contained within those documents indicates an intent to bind HealthSouth nor the Authority to a perpetual indemnity agreement.

The court notes that the original contract between Lloyd Nolan and Tenet–a contract to which the Authority and HealthSouth were not parties–required Tenet to bind over any future owner of the hospital to Tenet's obligations regarding the resale of the beds and the retiree medical discount program. If Tenet's intent had been to use a perpetual indemnity clause to honor its obligation to bind over future owners, surely that perpetual indemnity clause would have been included in one of the original documents involved in the sale, not in an agreement to amend the due date of the Promissory Note–an agreement that came into existence solely because the Authority could not pay the Note on the due date specified in the original agreements.

Perhaps even more revealing is *Tenet's* understanding of the limitation of the indemnity provision in the Security Agreement.[7] No express durational clause existed within the Security Agreement's indemnity provision; yet, according to Tenet,

> [t]he obligations in the Security Agreement expired *upon payment and satisfaction of the Note.* . . . Because there was no language extending the duration of that duty to indemnify past repayment of the Note, if the parties had intended for this indemnification provision to survive repayment of the Note, the parties would have been required

---

[7]The Security Agreement contained the following indemnity provision:
> To the extent not prohibited by applicable law which cannot be waived, Debtor [the Authority] shall indemnify and hold Secured Party [Tenet] harmless from and against any and all claims, damages, losses, liabilities, or judgments which may be incurred or sustained by or asserted against Secured Party, directly or indirectly, in connection with the existence of any of the rights of Secured Party with respect to the Collateral.

*Security Agreement*, Doc. 84, Ex. C, p. 3, paragraph 1.3.

13

> to insert distinct language to that effect. Intentionally, though, there was no language extending the duration of the obligation to indemnify past repayment of the Note, and the duty to indemnify contained in the Security Agreement expired upon payment of the Note.

*Tenet Healthcare Corp.'s Opposition to Motions For Summary Judgment*, Doc. 96, at p. 11 (emphasis Tenet's). Surely the same could be said for the indemnity provision in the Agreement Regarding Amendment.

Furthermore, as HealthSouth points out, the Guaranty Agreement, which expired when the Note was fully paid, contained the following language: "Any modification, supplement, or waiver shall be for such period and subject to such conditions as shall be specified in the written instrument effecting the same." *Third-Party Defendant HealthSouth Corporation's Motion for Summary Judgment and Supporting Brief*, Doc. 80, at p.13; *Guaranty Agreement*, Doc 81, Ex. D, at 4-5, paragraph 14. No time limit other than a six-month extension for payment specifically altered or supplemented the time limitations in the Guaranty Agreement.

Because the indemnity provision contains language ("Payee" and "Guarantor") linking its duration to the payment of the Note and because the remaining provisions in the Agreement and in the other documents comprising the transaction at issue impliedly establish that the indemnity provision expired upon payment of the Note, the court holds that the indemnity provision in the Agreement Regarding Amendment expired upon payment of the Note and grants the motions for summary judgment (Docs. 77 and 80) in favor of the Authority and HealthSouth on this issue. Consequently, the court denies Tenet's motion for summary judgment (Doc. 82). Because no claims remain against Third Party Defendant HealthSouth Corporation and Third Party Defendant Fairfield Healthcare Authority, the court dismisses them with prejudice from the case.

**C. The Authority authorized HealthSouth to execute an indemnity agreement on its behalf.**

The Authority argues that it did not authorize HealthSouth to execute an indemnity agreement on the Authority's behalf. In light of the court's ruling on the purely legal questions regarding the issue of indemnity, the issue is now moot. Nevertheless, out of an abundance of caution, the court addresses the Authority's argument on this point. The Authority makes its argument in a most cursory way and does not carry its burden to establish that no genuine issue of material fact exists as to whether it authorized HealthSouth to execute an indemnity agreement on its behalf.

Even if the Authority could establish beyond any question of fact that it did not authorize HealthSouth to commit the Authority to an indemnity agreement, equity would nevertheless require the Authority to fulfill its contract. The Authority accepted a benefit from Tenet in exchange for the entire Agreement Regarding Amendment. When the Authority could not pay the Note, Tenet amended the Note and extended the deadline "in consideration of . . . the mutual promises and covenants contained in [the] Agreement [Regarding Amendment]." *Agreement Regarding Amendment*, Doc. 81, Ex. F, p. 1; *see S. Energy Homes, Inc. v. Ard*, 772 So. 2d 1131, 1134 (Ala. 2000) ("A [party] cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions.") (citations omitted); *Mobil Oil Corp. v . TVA*, 387 F. Supp. 498, 514 (N.D. Ala. 1974) (holding that a party who "accepted the benefits of a contract cannot escape its burdens") (citing *United States v. San Francisco*, 310 U.S. 16, 29-31 (1940); *Lyle Cashion Co. v. McKendrick*, 204 F.2d 609, 612 (5th Cir. 1953)).

Therefore the court DENIES the Authority's summary judgment motion (Doc. 77) as to whether the Authority authorized HealthSouth to enter into the indemnity provision on its behalf.

A separate order will be entered contemporaneously with this memorandum opinion.

Dated this 9th day of November, 2004.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE